Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| DANIEL MARTÍNEZ AVILÉS<br><br>**Parte recurrente**<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PR<br><br>**Parte recurrida** | **TA2026RA00272** | **REVISIÓN ADMINISTRATIVA**<br>Procedente la Autoridad de Acueductos y Alcantarillados<br><br>Caso Núm.:<br>**AA-17-645**<br><br>Sobre:<br><br>Facturación por Salidero Oculto y Debido Proceso de Ley |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pérez Ocasio y la juez Trigo Ferraiuoli.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de junio de 2026.

Comparece ante nos, Daniel Martínez Avilés, en adelante, Martínez Avilés o recurrente, solicitando que revisemos la *"Resolución Final"* notificada el 13 de marzo de 2026 por la Autoridad de Acueductos y Alcantarillados, en adelante, AAA o recurrida. En la misma, la AAA realizó un ajuste al saldo debido por el recurrente, correspondiente a catorce (14) facturas acumuladas.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

**I.**

El 19 de agosto de 2017, Martínez Avilés recibió dos (2) facturas de la AAA con un monto adeudado de $854.68, sobre una propiedad que, en aquel momento, se encontraba arrendada.[1] El 23 de agosto de 2017, el recurrente objetó la mencionada factura, y al

---

[1] Apéndice del recurso, páginas 89-90.

día siguiente, la AAA condujo una investigación al respecto.[2] Mediante misiva fechada el 30 de agosto de 2017, la agencia recurrida asignó el número de querella 000054694398 a la impugnación de las facturas descritas. Además, le indicó a Martínez Avilés que la lectura de su contador estaba correcta, y le exhortó a verificar un posible salidero oculto de agua.

El recurrente solicitó revisión sobre la determinación de la oficina comercial del Municipio de San Juan, y el 8 de diciembre de 2017, la AAA le envió un comunicado advirtiéndole que, de su investigación, *las lecturas impugnadas estaban correctas*.[3] Nuevamente, le sugirieron al recurrente contratar un plomero que verificara las instalaciones internas de la propiedad. Inconforme aun, Martínez Avilés solicitó la celebración de una vista administrativa ante la agencia recurrida.[4]

Surge que el 17 de mayo de 2024, un plomero contratado por Martínez Avilés evaluó la propiedad en cuestión, e identificó y reparó un salidero oculto. El 30 de mayo de 2024, el recurrente presentó ante la AAA una factura por dicha reparación. Por ello, el 6 de septiembre de 2024, la AAA realizó un ajuste a la deuda por la cantidad de tres mil doscientos veintinueve dólares con noventa y dos centavos ($3,229.92), correspondientes a catorce (14) facturas durante los meses de julio del año 2023 y agosto del año 2024.[5]

Para la fecha de enero del año 2025, la deuda del recurrente ascendía a los veinte y un mil dólares ($21,000.00). El 8 de abril de 2025 se celebró la vista administrativa, en la cual Martínez Avilés solicitó un término para presentar su posición por escrito.[6] Así, el 28 de abril de 2025, el recurrente radicó su *Moción Fijando Posición*

---

[2] Apéndice del recurso, págs. 87-88.
[3] *Id.,* págs. 81-83.
[4] *Íd.*, págs. 79-80.
[5] *Íd.*, págs. 46-48.
[6] *Íd.*, págs. 44-45.

*en Torno a Aspecto Procesal* ante la AAA.[7] En su escrito, el recurrente arguyó, entre otras cosas, que la AAA debió suspender el servicio y el ajuste debió comprender todo el periodo impugnado, puesto que no existe una obligación de así hacerlo mensualmente. El 12 de marzo de 2026, la agencia recurrida emitió una *Resolución Final*.[8] En su dictamen, confirmó el ajuste realizado, y declaró *No Ha Lugar* a la posición del recurrente. Sostuvo, además, que la demora en realizar la reparación correspondiente es atribuible al cliente, y que las facturas adicionales al ajuste no fueron impugnadas oportunamente.

El 1 de abril de 2026, el recurrente solicitó reconsideración, y el 27 de abril de 2026, la recurrida declaró *No Ha Lugar* la misma.[9] Inconforme aun, el 26 de mayo de 2026, Martínez Avilés recurrió ante esta Curia mediante recurso de revisión, haciendo los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró la AAA al aplicar de forma selectiva, arbitraria e inconsistente la Ley Núm. 33-1985 y el Reglamento Núm. 8901, exigiendo una impugnación individual de cada factura para sostener el cobro, mientras que, bajo esa misma teoría, la AAA estaba obligada por Ley a suspender el servicio respecto a las facturas alegadamente no impugnadas, cosa que nunca hizo.
>
> **SEGUNDO ERROR:** Erró la AAA al imponer al recurrente un requisito de impugnación mensual factura por factura que no existe en la Ley Núm, 99-1985 ni en el Reglamento Núm. 8901, en violación a los principios de fair notice y al debido proceso de ley garantizado por el Art. II, Sec. 7, de la Constitución del Estado Libre Asociado de Puerto Rico y por la decimocuarta enmienda de la Constitución de los Estado Unidos de América.
>
> **TERCER ERROR:** Erró la AAA al adjudicar la querella ocho (8) años y seis (6) meses después de presentada, incurriendo en una dilación extraordinaria que lesionó el debido proceso de ley del recurrente, contribuyó materialmente a la

---

[7] Apéndice del recurso, págs. 32-43.
[8] *Íd.*, pág. 25.
[9] *Íd.*, págs. 12-24.

acumulación artificial de la deuda, y cuyas consecuencias económicas no pueden ser trasladadas al abonado.

**CUARTO ERROR:** Erró la AAA al imputar recurrente un "consumo" que en realidad fue realizado por una arrendataria amparada en los beneficios de la Sección 8 de la Administración de Vivienda Pública, a través de un salidero oculto ya notificado a la agencia, mientras la propia AAA se abstenía de ejercer su facultad de suspender el servicio o de resolver la querella oportunamente.

**QUINTO ERROR:** Erró la AAA al limitar arbitrariamente el ajuste por salidero oculto bajo el Art. 2.30(1) del Reglamento Núm. 8901 a un periodo de catorce (14) facturas (Julio 2023 – Agosto 2024), cuando la causa técnica, posible salidero oculto, había sido identificada y notificada por escrito por la propia agencia desde el 30 de agosto de 2017.

**SEXTO ERROR:** Erró la AAA al descargar en el recurrente las consecuencias económicas de su propia inacción institucional, en contravención de la doctrina de estoppel, de los principios de razonabilidad administrativa y de la política pública de la Ley Núm. 33-1985.

**SÉPTIMO ERROR:** Erró la AAA al emitir una resolución final carente de determinaciones de hecho y conclusiones de derecho que atendieran los planteamientos sustantivos del recurrente, incluyendo el efecto jurídico de la dilación institucional y la aplicación selectiva del Reglamento 8901, en cumplimiento con la Sec. 3.14 de la LPAU.

El 28 de mayo de 2026 emitimos una "Resolución" concediéndole a la parte recurrida hasta el 16 de junio de 2026 para presentar su posición en cuanto al recurso, conforme a la Regla 7B(5) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025). El 15 de junio de 2026, la AAA compareció mediante *"Alegato en Oposición a Recurso de Revisión Administrativa"*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Revisión Judicial de Decisiones Administrativas**

En nuestro ordenamiento jurídico se le reconoce a todo ciudadano el derecho estatutario a recurrir de las decisiones de un organismo inferior. *Isleta v. Inversiones Isleta Marina*, 203 DPR 585, 589 (2019). Tal derecho, sin embargo, está sujeto a limitaciones legales y reglamentarias, entre las que se encuentra su correcto perfeccionamiento. *Isleta v. Inversiones Isleta Marina*, supra.

De otra parte, es harto conocido que las disposiciones reglamentarias que rigen el perfeccionamiento de los recursos apelativos deben observarse rigurosamente y su cumplimiento no puede quedar al arbitrio de las partes o sus abogados. *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *Isleta v. Inversiones Isleta Marina*, supra; *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 290 (2011).

Sabido es que, en nuestro estado de derecho actual, las decisiones, órdenes y resoluciones finales de los organismos administrativos están sujetas a la revisión del Tribunal de Apelaciones. Artículo 4006 (c) de la Ley de la Judicatura de Puerto Rico, Ley Núm. 201-2003, 4LPRA sec. 24; Ley Núm. 38-2017 Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, 3 LPRA secs. 9671 y 9672; Regla 56 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 75, 215 DPR ___ (2025); *Vur-Jer v. Junta Reglamentadora*, 2026 TSPR 46, 218 DPR ___ (2026); *Simpson, Passalaqua v. Quiros, Betances*, 214 DPR 370, 377 (2024); *Miranda Corrada v. DDEC, et al.*, 211 DPR 738, 745 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018). El objetivo principal de la revisión judicial consiste en auscultar si la agencia administrativa actuó de conformidad a las facultades que fueron conferidas por Ley. *Ruiz*

*Matos v. Dept. Corrección*, 213 DPR 291, 296 (2023); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 113-114 (2023); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022).

De ordinario, estas revisiones proceden al adjudicarse finalmente todas las controversias en consideración de la agencia y al agotarse todos los remedios administrativos disponibles para un litigante. *Vur-Jer v. Junta Reglamentadora,* supra; *Buxó Santiago v. ELA et als.,* 2024 TSPR 130, 215 DPR __ (2024); *Miranda Corrada v. DDEC, et al.*, supra, pág. 746; *Pérez López v. Dpto. Corrección*, supra, pág. 672; *Fonte Elizondo v. FR Conts.* 196 DPR 353, 358 (2016). Además, la facultad de cuestionar una determinación administrativa forma parte del debido proceso de ley, el cual es un derecho con rango constitucional. *ACT v. Prosol et als.*, 210 DPR 897, 908 (2022); *Asoc. Condomines v. Meadows Dev.*, 190 DPR 843, 847 (2014).

Empero, huelga decir que "la revisión judicial no es equivalente a una sustitución automática del criterio e interpretación del ente administrativo." *Hernández Feliciano v. Mun. Quebradillas,* supra, págs. 115-116; *Capó Cruz v. Jta. Planificación, et al.*, 204 DPR 581, 591 (2020). A tenor con ello, el foro apelativo debe hacer distinción entre los asuntos consistentes a la discreción o pericia de la agencia, y las controversias relacionadas a la interpretación estatutaria, en las cuales los tribunales son especialistas. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 116; *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).

Los foros judiciales estamos llamados a concederle deferencia a las decisiones de las agencias administrativas por razón de la experiencia y el conocimiento especializado que estas poseen sobre los asuntos que se les han delegado. *Vázquez et al. v. DACo,* 2025 TSPR 56, 215 DPR ___ (2025); *Katiria's Café Inc. v. Mun. Aut. San*

*Juan,* 2025 TSPR 33, 215 DPR __ (2025); *Jusino Rodríguez v. Junta de Retiro,* 2024 TSPR 138, 215 DPR __ (2024); *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *Voilí Voilá Corp. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Hernández Feliciano v. Municipio de Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* supra, págs. 88-89; *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Cónsono con lo anterior, los dictámenes administrativos están revestidos de una presunción de legalidad y corrección, la cual subsiste, mientras que la parte que los impugna no produzca suficiente evidencia para derrotarla. *Katiria's Café Inc. v. Mun. Aut. San Juan,* supra; *Transp. Sonell v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs Bank,* supra; *Voilí Voilá Corp. v. Mun. Guaynabo,* supra; *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* supra, pág. 89; *Rolón Martínez v. Supte. Policía,* supra, pág. 35.

Sin embargo, nuestro más Alto Foro recientemente dispuso, acogiendo así la normativa que impera en el Foro Federal, que la deferencia administrativa debida *no se extiende a las determinaciones de derecho. Vázquez, et als. vs. DACo,* supra. Es decir, la deferencia de los foros judiciales a las agencias administrativas continua vigente para las determinaciones de hecho que estas realicen. Sin embargo, conforme al cumplimiento de las facultades revisoras sobre el derecho, estamos instruidos por nuestro Tribunal Supremo a revisar, sin los amarres de la deferencia, las determinaciones de derecho de las agencias administrativas. *Id.* Por su parte, la LPAUG, supra, sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". Por todo lo cual, el precitado caso reza de la siguiente manera:

[l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la

necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, **_será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos._**

*Vázquez, et als. vs. DACo,* supra.
(Énfasis suplido).

## B. Impugnación de facturas ante la Autoridad de Acueductos y Alcantarillados

La AAA es una corporación pública creada mediante la Ley de Acueductos y Alcantarillados de Puerto Rico, en adelante, Ley de la AAA, Ley Núm. 40 del 1 de mayo de 1945, 22 LPRA secs. 141 *et seq.* La Autoridad se crea con el fin de proveer y ayudar a proveer a los ciudadanos un servicio adecuado de agua y de alcantarillado sanitario y cualquier otro servicio o instalación incidental a estos fines.

Entre sus facultades, la AAA tiene la autoridad de imponer tarifas y cobrarlas por el uso de sus facilidades y por el ofrecimiento de los servicios de agua y alcantarillados. Sección 4(i) de la Ley de la AAA, *supra,* sec. 144. En virtud de los poderes concedidos por la Ley de la AAA, *supra,* se promulgó el Reglamento Sobre el Uso de los Servicios de Acueducto y Alcantarillado Sanitario de Puerto Rico, Reglamento Número 8901 de 27 de enero de 2017, en adelante, Reglamento de Uso. El referido reglamento dispone lo siguiente, referente a la responsabilidad de pago de los clientes:

Todo cliente será responsable del pago por todos los servicios prestados bajo su nombre. Dicha responsabilidad continuará vigente, aun cuando el cliente haya dejado de utilizar los servicios y los mismos continúen siendo utilizados por otras personas, con o sin su consentimiento. Dicha responsabilidad cesará únicamente cuando el cliente haya solicitado debidamente el cese de los servicios y pagado cualquier deuda pendiente.

Artículo 3.05 del Reglamento de la AAA, supra.

El Artículo 2.25 y el Artículo 3.08 del referido Reglamento conceden la facultad de objetar las facturas emitidas por la AAA, condicionando esta prerrogativa a lo dispuesto en la Ley para Establecer Requisitos Procesales Mínimos para la Suspensión de Servicios Públicos Esenciales, Ley Número 33 de 27 de junio de 1985, en adelante, Ley Núm. 33, 27 LPRA sec. 262 *et seq.*

El precitado estatuto, el cual aplica a la Autoridad de Acueductos y Alcantarillados de Puerto Rico, se aprobó con "el propósito de garantizar a los abonados o usuarios una adecuada oportunidad de objetar la corrección y procedencia de los cargos facturados, una adecuada notificación de la decisión de suspenderle el servicio por falta de pago y garantizar además la adecuada divulgación de la totalidad del procedimiento establecido". Artículo 1 de la Ley Núm. 33, *supra*, sec. 262.

Por otro lado, en la Exposición de Motivos de la Ley en cuestión, el Legislador facultó a las autoridades que provean servicios esenciales a suspender los mismos cuando los usuarios no paguen las tarifas facturadas.

Ahora bien, surge del Artículo 3(a) de la Ley Núm. 33, *supra*, sec. 262(b), que el término de veinte (20) días para pagar u objetar una factura, comienza a correr a partir del envío de la misma.

Por último, y por ser relevante a la controversia de autos, destacamos que el Reglamento de la AAA, *supra*, atiende el asunto de los tipos de ajustes en facturas. Con relación a los salideros ocultos, el Artículo 2.30 del Reglamento de la AAA, *supra*, reza de la siguiente manera:

> Cuando un cliente o usuario objete, conforme a la Ley Núm. 33, una factura y se evidencie pérdida de agua por un salidero oculto, se ajustará el cien por ciento (100%) del servicio de alcantarillado sanitario sobre el promedio de consumo del cliente o usuario. Se tomará como base para realizar el ajuste,

el promedio de consumo del cliente después de la reparación. El cliente tendrá que hacer la reparación dentro de los quince (15) días calendarios de la notificación por parte de la Autoridad, de lo contrario, no se podrá beneficiar de este ajuste, a menos que el cliente demuestre justa causa para no poder realizar la reparación en dicho término. Este ajuste no se aplicará cuando el servicio de alcantarillado sanitario es facturado conforme a las lecturas del medidor de flujo.

### III.

Martínez Avilés recurre ante este Foro, mediante el recurso de autos, haciendo varios señalamientos de error. En síntesis, sostiene que la AAA se equivocó, de varias formas, en su manejo y adjudicación de la impugnación de factura incoada por este. Plantea que las catorce (14) facturas emitidas por la Agencia recurrida no tenían que ser objetadas individualmente. Es su contención, que las facturas impugnadas durante el año 2017 deben comprender las subsiguientes. Para ello, razona el recurrente que la AAA reconoció, mediante misiva, que existía un salidero. Según este, si la Agencia en cuestión conocía de este vicio, debió suspender los servicios de acueductos y alcantarillados, máxime cuando la propiedad en cuestión estaba alquilada y no habitada por este.

Por otro lado, sostiene que la demora en los arreglos es atribuible a la demora en la atención administrativa a sus objeciones. También, aduce que, por haberse atendido el asunto del salidero, la AAA debe realizar un ajuste a las catorce (14) facturas. Por estar estrechamente relacionados cada uno de estos errores, los atenderemos en conjunto.

Martínez Avilés señala que las facturas que comprenden la deuda ascendente a veintiún mil ($21,000.00) dólares deben considerarse impugnadas, puesto que este objetó la primera lectura extraordinaria. Sin embargo, una breve evaluación del proceso dispuesto – estatuariamente y en el Reglamento de la AAA –

descubre la necesidad de que las facturas sean objetadas, oportuna e individualmente, dentro de los veinte (20) días de ser notificadas. El recurrente solo impugnó dos (2) de estas facturas solamente. De estas objeciones surge el expediente, y la querella número 000054694398. Cualquier otra objeción, relacionada a las otras facturas, no fue impugnada oportunamente, por lo que corresponde el pago de las mismas. Máxime cuando el recurrente había sido advertido sobre un posible salidero oculto, tan pronto como el 30 de agosto de 2017.

Se equivoca Martínez Avilés al señalar, como un acto de irresponsabilidad administrativa, que la AAA no haya detenido sus servicios para la propiedad de este. Sostiene que no residía en dicha propiedad, y que la extraordinaria cantidad "jamás se habría acumulado si la AAA hubiese aplicado su propio esquema reglamentario de modo coherente y completo". Si bien los procesos ante la AAA fueron atendidos durante un periodo extenso de tiempo, ello no exime a sus usuarios de atender los posibles defectos – en este caso salideros ocultos – en sus propiedades. Como vimos, el Reglamento de la AAA, *supra*, impone sobre los clientes de la AAA la responsabilidad de pagar por los servicios suministrados por la agencia en cuestión "aun cuando el cliente haya dejado de utilizar los servicios y los mismos continúen siendo utilizados por otras personas, con o sin su consentimiento". Esta responsabilidad solo cesará cuando el cliente solicite la suspensión de los servicios o se hayan pagado las facturas adeudadas.

Es decir, quién residía en la propiedad o un posible salidero no obliga a la AAA a cancelar sus servicios. De una evaluación de las disposiciones estatutarias y reglamentarias aplicables, tampoco surge que la agencia recurrida esté en la obligación de suspender sus servicios en una propiedad, cuando un cliente presente una objeción o querella ante la AAA.

Por otro lado, el Reglamento de la AAA, supra, dispone de unos proceso y términos para realizar un ajuste de factura cuando exista un salidero oculto, y el cliente lo atienda. Desde el mes de agosto del año 2017, la AAA le indicó a Martínez Avilés que había errores en las lecturas de su contador, por lo que debía contratar un profesional y verificar si existía un posible salidero oculto en su propiedad. Cuando el recurrente finalmente arregló el problema, ya habían transcurrido los quince (15) días dispuestos en el Reglamento de la AAA, *supra,* para que proceda el ajuste del cien porciento (100%). Sin embargo, la Agencia realizó un ajuste relativo al periodo justamente anterior al arreglo, no estando obligado en derecho a así hacerlo.

Para merecer los ajustes, cada una de las facturas aludidas en el escrito del recurrente, desde el año 2017 al año 2023, debió ser objetada dentro de los veinte (20) días establecidos por la Ley Núm. 33, *supra.* En el caso de Martínez Avilés, tratándose su situación de un salidero oculto, este debió haber realizado las reparaciones del mismo, dentro de los quince (15) días de haber sido notificado por la AAA del salidero oculto.

Evaluado el expediente, los escritos de ambas partes y la normativa aplicable, justipreciamos que la Agencia recurrida no incurrió en error.

**IV.**

Por los fundamentos antes expuestos, *confirmamos el dictamen recurrido.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones